[No. 18129. Department One. December 11, 1923.].

VAN DUSEN HARRINGTON COMPANY, *Respondent*, v.
W. F. JAHN & COMPANY, *Appellant*.[1]

SALES (80)—DELIVERY AND ACCEPTANCE—WAIVER OF OBJECTION.
Plaintiff, the seller of oats, having admitted that the certificates did
not comply with the contract and justified defendant's refusal to
accept delivery, did not sustain the burden of proving a waiver,
where such waiver was flatly denied by the defendant, and plaintiff's
witness to a request for new certificates (relied upon as an implied
promise) stated that he could not recall the conversation.

SAME (80). Having accepted a carload of oats, sold subject to
Minnesota state inspection, without the required certificate that
they were clipped oats, the buyer is bound thereby, after it is shown
that the Minnesota state inspector established that the oats were
clipped.

Appeal from a judgment of the superior court for
King county, Griffiths, J., entered February 20, 1923,
upon findings in favor of the plaintiff, in an action on
contract, tried to the court. Reversed.

*Roberts & Skeel* and *J. J. Geary,* for appellant.
*Donworth, Todd & Higgins,* for respondent.

TOLMAN, J.—Respondent, as plaintiff, brought this
action to recover a loss alleged to have been suffered
by the refusal of the defendant to accept and pay for
certain grain purchased under a written contract.
From a judgment allowing such recovery to the extent
of $275.50, the defendant has appealed.

The contract involved calls for the sale and pur-
chase of one hundred tons No. 3, white clipped oats, at
$33.50 per ton, f. o. b., Minneapolis, Minnesota state
inspection and weights to govern. Payment to be by
demand draft with documents attached. Shipment
within ten days.

[1]Reported in 221 Pac. 301.

The shipment was made in three cars, all within ten days, the first on March 4, 1922, and the remaining two on March 8, following. The drafts and documents arrived in Seattle in advance of the shipments to which they related. On the arrival of the first draft, appellant's bookkeeper paid it, and delivered the cancelled draft with its accompanying documents to appellant's manager, who then discovered that the grade certificate did not show the shipment to be clipped oats, though otherwise complying with the terms of the contract. However, having paid the draft, appellant received the first car on its arrival, unloaded its contents, and had the oats clipped at a cost of $90, which it seeks to recover by cross-complaint.

Thereafter, in due course, drafts and documents covering the two remaining cars were presented, and appellant, upon examination before payment, discovered that the grade certificates accompanying these drafts also failed to show the oats to be clipped. What then actually occurred is somewhat in dispute. The broker acting for respondent, who sold the oats, testified that Mr. Jahn then told him the oats would not be accepted, and he thereafter advised respondent of the situation by wire, and received information in reply to the effect that the oats were in fact clipped; that the grade certificates erroneously failed to show the fact, and he was instructed to return such certificates to Minneapolis to be corrected accordingly; that he returned the certificates about March 20, and received corrected certificates showing that the oats fully complied with the contract, on March 28, and on that day tendered the corrected certificates to appellant. At that time there were demurrage charges against two cars amounting to $76, which were not paid or tendered by respondent; and upon appellant's refusal to accept the oats after notice, they were re-sold at a loss equalling the amount

of the judgment as entered, plus the demurrage charges.

It is claimed that the obtaining of the corrected certificates was at the request and with the consent of appellant, with an implied promise to accept the oats if they were clipped. The witness testified:

"A. Mr. Jahn said to wire Van Dusen Harrington to send him new certificates. He said that that could be done without the original ones being surrendered.

"Q. And after you were notified by them that the originals would have to be returned, what did Mr. Jahn say to you with regard to the return of them, anything?

"A. I don't recall any conversation about that."

Upon this subject, Mr. Jahn testified:

"A. I notified their agent then, Lund Hamblen, that the oats did not—that the certificates did not cover the quality of oats we had purchased. So he said he would take it up with his principals and let us know further about it. A little later on he called up, I think, and said that probably it might be just as well to hold these certificates until we got certificates that would cover those cars with the word 'clipped' on them. I said, 'That is entirely up to you.' He said, 'If we mailed them back they would get half way back to Minneapolis and pass in the mail and we might want to make further disposition of the cars.' So I said, 'It is entirely up to you. We won't accept it.' Q. Did you tell him to get corrected certificates? A. No, no."

Having admitted that the certificates did not show compliance with the contract, and that, on the face of the certificates, appellant was justified in refusing to accept the shipments, the burden was upon the respondent to show a waiver. This quoted testimony, with all the other facts and circumstances in the case, preponderates against there having been such a waiver, and convinces us that the respondent has not met the burden of proof, and therefore cannot recover.

Nor can appellant recover upon its cross-complaint. By its contract, it was bound by Minnesota state inspection, and it is shown that the Minnesota state inspection established that the oats in the first car were, in fact, clipped oats. Having accepted the car without the required certificate, appellant was bound by the existing fact.

The judgment appealed from is reversed with instructions to dismiss the action.

MAIN, C. J., HOLCOMB, PARKER, and MACKINTOSH, JJ., concur.